E-FILED; Montgomery Circuit Court
Docket: 8/3/2026 3:37 PM; Submission: 8/3/2026 3:37 PM
Envelope: 27637851

**IN THE CIRCUIT COURT FOR
MONTGOMERY COUNTY, MARYLAND**

DEANDRE' JACKSON, individually and on behalf of all others similarly situated
5313 Muncaster Mill Rd.
Deerwood, MD 20855,

Plaintiff,

v.

UNITED BEAUTY BRANDS, LLC d/b/a OUAI HAIRCARE
811 W. 7th St., Suite 1299
Los Angeles, California 90017,

Defendant.

Case No. C-15-CV-26-004412

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

## I. Introduction

1. This is a class action against Defendant United Beauty Brands, LLC d/b/a OUAI Haircare ("Defendant" or "OUAI") for its practice of sending false and misleading marketing and commercial emails to Maryland residents.

2. The ubiquity of false, misleading, and deceptive email marketing is well documented—and personally experienced by virtually anyone with an email account. To address misleading and predatory email practices, the Maryland legislature enacted the Maryland Commercial Electronic Mail Act ("MCEMA"), Md. Code, Comm. Law § 14-3001 *et seq*. MCEMA forbids sending an email that "[c]ontains false or misleading information in the subject line that has the capacity, tendency, or effect of deceiving the recipient." Md. Code, Comm. Law § 14-3002(b)(iii).

3. Defendant is a lifestyle and luxury hair and body care brand founded by a celebrity hairstylist.

4. Defendant routinely offers discounts on products on its website to drive sales and profits. Defendant extensively advertises these purported discounts, including by sending commercial emails to Maryland residents with subject lines promoting the discounts. For example, "LAST CHANCE to save 20% sitewide". Defendant frequently sends emails with subject lines emphasizing the supposed limited duration of its sales—with attention-grabbing labels like "ENDS TONIGHT," "LAST CHANCE!" "FINAL HOURS." This strategy creates a sense of urgency to act now, notwithstanding that the offer lasts longer than advertised.

5. Defendant often sends emails asserting and advertising that a sale has been extended, offering "more time to save" notwithstanding that, upon information and belief, Defendant always intended and planned for the sale to last through the "extended" time. And even when the sale isn't expressly "extended," it is routinely replaced with a substantially similar sale.

6. Defendant sends marketing emails to Maryland consumers containing false or misleading information in the subject lines, with the capacity, tendency, or effect of deceiving and misleading the recipient. And so, Defendant violates the MCEMA.

7. Plaintiff is a Maryland resident who received emails from Defendant with false and misleading subject lines promoting sales and discounts for OUAI products. Plaintiff brings this case, individually and on behalf of the proposed Class, to protect Maryland residents from Defendant's false and misleading emails about its purported discounts.

## II. Parties

8. Plaintiff DeAndre' Jackson is, and at all relevant times was, a resident of Montgomery County, Maryland.

9. Defendant United Beauty Brands, LLC d/b/a OUAI Haircare is incorporated in California and headquartered in Los Angeles, California.

## III. Jurisdiction

10. This Court has jurisdiction over this case under Md. Code, Cts. & Jud. Proc. § 1-501.

11. This Court has personal jurisdiction over Defendant under Md. Code, Cts. & Jud. Proc. § 6-103(1)-(3), because Defendant systematically transacts business in Maryland, directs marketing messages to consumers in Maryland, collects money from Maryland banks and Maryland consumers who purchase products online, and the claims giving rise to this action arise from Defendant's purposeful transmission of electronic mail messages to Maryland residents and from acts and events that occurred in Maryland.

## IV. Facts

### A. Marketing Emails Using False Scarcity Tactics Harm Consumers and Competition

12. Misleading email subject lines are not a new problem. In 2003, the U.S. Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

13. A 2012 study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

14. Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. Email addresses are requested from all sorts of companies—banks, retailers, service providers, apps, and on and on. Emails, and email marketing, are a ubiquitous feature of modern commerce.

15. A common tactic used by online marketers is to "manipulate consumer choice by inducing false beliefs" by creating a false sense of urgency or to falsely claim that the time to act is limited and expiring soon. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.ccN848-7TVV/.

16. This practice is rooted in the concept of "time scarcity," one of the six principles of persuasion recognized by Dr. Robert Cialdini. Cialdini, *Influence: The Psychology of Persuasion* (1984). Marketers use time scarcity to push people into buying now rather than putting the decision off because a delayed decision is usually a lost sale.

17. In this context, time scarcity leverages psychological biases like loss aversion (people are more motivated to avoid losing a deal than to gain the same deal without a deadline), limited deliberation (since the clock is ticking), and perceived value (sales are perceived as more valuable when offered for a limited time) to drive purchases.

18. Prospect theory, developed by behavioral economics pioneers, Daniel Kahneman and Amos Tversky, supports this framework. Prospect theory holds that consumers are more sensitive to losses than gains. Kahneman, D., & Tversky, A. *Prospect Theory: An Analysis of Decision under Risk*, Econometrica (1979). Advertisers using artificial limited duration promotions weaponize prospect theory against consumers: as a promotion's expiration date approaches, consumers come to perceive the unused sale as a potential loss rather than a foregone gain, consistent with prospect-theoretic predictions, thus raising the likelihood the consumer will act on the sale. (Kahneman & Tversky, 1979; Spears, 2001; Aggarwal & Vaidyanathan, 2003).

19. "False or misleading scarcity claims can change the behaviour of consumers." *Online Choice Architecture*, *supra* para. 15, at 27.

20. Representations about the timing and duration of sales, discounts, and special offers are representations about prices, and such representations matter to consumers. *See, e.g.*, Huiliang Zhao et al., *Impact of Pricing and Product Information on Consumer Buying Behavior with Consumer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/.

21. False time scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 15, at 26.

22. Manufacturing time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.* When faced with time pressure, "consumers might take up an offer to minimize the uncertainty of passing it up." *Id.*

23. False time scarcity claims thus harm consumers by distorting their decision-making to their detriment—and the seller's benefit.

24. False time scarcity is also harmful to competition. "Making time-limited offers is a common retail pricing strategy. Economic theory implies that such offers inhibit price search, making markets less competitive." Robert Sugden, et al., *Take it or leave it: Experimental evidence on the effect of time-limited offers on consumer behaviour*, J. ECON. BEHAVIOR & ORGANIZATION (Dec. 2019).

25. Recognizing the harmful impact on consumers, the FTC has identified the "False Limited Time Message" as an example of false time scarcity claims—marketers create "pressure

to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra* para. 15, at 22.

**B. Defendant sends emails with false and misleading subject lines advertising its products**

26. Defendant is a lifestyle and luxury beauty brand founded by a celebrity hairstylist, offering hair care, body care, and lifestyle fragrance products.

27. OUAI routinely advertises discounts and sales through emails to individuals on its email list. In its email advertisements, Defendant frequently advertises discounts on full purchases and individual products that, it says, will end at a specified time, fostering a sense of urgency concerning purportedly soon-to-be-ending sales.

28. These emails, initiated, sent, and/or transmitted by Defendant, contain subject lines that are false and misleading. Specifically, Defendant's email subject lines often state that the marketed sales or discounts are of limited duration—for example, "FINAL HOURS" or "ONE DAY ONLY" or "ENDS TONIGHT!" or "LAST CHANCE."

29. To reasonable consumers, such statements convey that the discount is only available for a limited period, meaning that after the period ends—after the final "HOURS" lapse, when "TONIGHT" ends, or when the "LAST CHANCE" slips away—the referenced products will no longer be available at the "limited-time sale" prices and will instead return to their full price.

30. Such understanding, however, would be wrong. Invariably, the sale or discount is continued, often accompanied by more urgent emails prompting consumers to act now before the new, *extended*, deadline elapses. Defendant continues or "extends" its supposed limited-time sales routinely, or functionally does so by replacing them with materially similar sales concerning

materially identical discounts. These email subject lines containing false expiration dates or times are false and misleading because they convey to consumers that the discounts will expire and will no longer be available unless the consumer purchases before the supposed expiration, which is false. Instead, OUAI products continue to be available at the discounted price long after the discounts are originally represented to expire.

31. During the class period, Defendant routinely deployed this strategy, sending emails to Plaintiff and other Class members, with false and misleading subject lines designed to create a false sense of urgency to spur immediate action. Included herein are a few examples of Defendant's emails initiated and sent in violation of the MCEMA.

32. On August 15, 2024, Defendant sent Plaintiff and other Class members an email with the subject line "LAST CHANCE to save 20% sitewide". The representations in the subject line had the capacity, tendency or effect of leading reasonable recipients of the email to believe that if they purchased during the specified period, they would receive the special 20% discount off the regular prices of products, but that such availability was of limited, shortly-to-expire duration—that it was a limited time sale that was ending that day, after which the advertised discount would no longer be available.

33. As it happens, August 15, 2024, was not the "LAST CHANCE" for Defendant's 20% off promotion, nor did the sale "End" on that date as Defendant proclaimed. On August 16, 2024, Defendant sent Plaintiff and the other Class members an email with the subject line "Get EVEN MORE time to save". Defendant "extended" the 20% off sitewide sale beyond the August 15 deadline, therefore not "ending" or making the August 15 email a customer's true "LAST CHANCE" to participate in the offer.

34. Another example: in late May 2026 Defendant sent a series of commercial emails to Class members with subject lines prompting recipients to act before May 25, 2026, the supposed deadline to receive 20% off sitewide:

| Email Date | Email Subject Line | Promotion |
|---|---|---|
| 5/25/2026 | ENDS TONIGHT: 20% off sitewide | 20% off all products on the website |
| 5/26/2026 | FINAL HOURS: 20% off sitewide | 20% off all products on the website |
| 5/26/2026 | ONE DAY ONLY: More time to save 20% | 20% off all products on the website |
| 5/27/2026 | 20% off ends TONIGHT | 20% off all products on the website |

35. The representations in the subject line had the capacity, tendency or effect of leading reasonable recipients to believe that if they purchased during the sale, they would receive the special discount, but that such availability was of limited, soon-to-expire duration. In other words, consumers were led to believe Defendant was offering a limited time sale, and after the sale end-date passed, customers would no longer be able to purchase products at a significant discount. So, if they were to wait, the sale would lapse and the products would return to their regular (higher) prices.

36. These examples are part of a consistent pattern and practice of OUAI, where it sends emails with false and misleading subject lines to create a false sense of urgency to act by an artificial deadline to avoid missing out on "limited time" promotions. The table below illustrates the pattern:

| Email Date & Time | Email Subject Line | Promotion |
|---|---|---|
| 2/27/2025 | Last Chance! Get two Free minis | Two free miniature products included with purchase |
| 2/28/2025 | Don't miss these FREE minis | Two free miniature products included with purchase |

| | | |
|---|---|---|
| 5/23/2025 | Last Call on 20% sitewide savings | 20% off all products on the website |
| 5/24/2025 | We're giving you more time to save 20% | 20% off all products on the website |
| 8/31/2025 | Last chance to save 20% sitewide | 20% off all products on the website |
| 9/1/2025 | Extra long weekend, extra time to save | 20% off all products on the website |
| 11/30/2025 | Last chance to save 25% on your OUAI | 25% off all products on the website |
| 12/1/2025 | FINAL HOURS: 25% off everything | 25% off all products on the website |
| 12/2/2025 | Surprise! We extended the Cyber Sale | 25% off all products on the website |
| 4/11/2026 | LAST CHANCE: Save an additional 15% on sets | 15% off product sets |
| 4/12/2026 | FINAL HOURS: Save an additional 15% on sets | 15% off product sets |
| 6/29/2026 | FREE shipping final hours | Free shipping on purchase |
| 6/30/2026 | Free will = FREE shipping | Free shipping on purchase |

37. Plaintiff (and Class Members) received these false and misleading emails—initiated and/or sent in violation of MCEMA—during the relevant time period.

38. In short: Defendant sent Plaintiff and Class members emails with subject lines falsely conveying that sales were about to end, and that recipients would save money by buying now, when in fact the sales weren't about to end, and recipients could continue to receive the same supposed discounts (or even deeper discounts) after the claimed end date of the sale. Defendant's email subject lines were false and misleading for these reasons.

39. Defendant sends these emails for the purpose of promoting its products and to drive sales. By misrepresenting the duration, reason, amount, and frequency of its supposed sales for its products, Defendant creates a false sense of urgency. These tactics work. Recipients who read Defendant's email subject lines believe that if they act now, they can purchase products at a limited-time discount. If they wait, then the discount will expire and they will have to pay the former or regular, higher price.

40. As discussed above, consumers care about receiving discounts. Receiving a good deal—a discount—is important to consumers, and material to consumer purchasing decisions regarding OUAI.

41. Discounts drive purchases. Consumers are more likely to make a purchase when they think they are getting a good deal. They are also willing to pay more if they believe what they are purchasing is worth more than they are paying and that they are getting a substantial discount.

42. By representing that a sale is ending at a specific, swiftly-forthcoming time, Defendant suggests an offer's rarity or urgency, stimulating consumers' desire to take advantage of the deal immediately while simultaneously inducing anticipatory regret of missing a good buy.

43. Defendant's advertisements generate the false belief that if consumers buy now, they would get a substantial discount on OUAI products, but if they wait, consider, and make an informed decision—even if they wait a short time—they will pay significantly more. This artificially increases consumer demand for OUAI products, which in turn increases Defendant's sales.

44. Defendant knows, or has reason to know, that it sends marketing emails containing false and misleading subject lines to Maryland residents. Defendant knows where recipients of its emails reside because (i) Defendant has physical addresses associated with recipients' accounts or orders for its products; (ii) Defendant has access to data regarding the recipient including the recipient's state of residence, such as IP address tracking through Defendant's marketing activities; (iii) accounts are created by consumers containing Maryland addresses; (iv) consumers order products from Defendant and have them shipped to their Maryland residential addresses; (v) Defendant utilizes cookies, pixels, and online tracking technologies to identify consumers (including their location) who click on links contained in Defendant's emails and those who visit

its website; and (vi) other methods, such as utilizing sophisticated third party companies who contract with companies like Defendant to create data profiles, including physical geographical locations, of consumers. Put simply, discovery will confirm and show that, at the time it sent the emails with false and misleading subject lines, Defendant had access to the data described above regarding the location of consumers in Maryland to whom it sent the emails at issue.

45. Defendant also knows what sales it is offering on its products; knows they will not end when its emails say they will; and knows that its claims about the advertised discounts in the email subject lines are false and misleading.

46. Defendant's commercial emails containing false and misleading information about its sales clog up inboxes with spam email, waste limited data space, and violate Plaintiff's and putative Class members' statutory right to be free from deceptive commercial emails.

47. Plaintiff was not, and putative Class members are not, aware that Defendant's email subject lines are false and misleading. Reasonable consumers, obviously, do not monitor OUAI's website and emails, nor track the sales available every day for months or years to determine whether or not the sales and end dates are real, and thus whether or not the email subject lines promoting those sales are true.

**C. Defendant's false and misleading emails to Plaintiff and Class members violate MCEMA**

48. MCEMA regulates and proscribes sending commercial emails that contain false or misleading information in subject lines. MCCL § 14-3002(b)(iii).

49. An injury occurs under MCEMA any time a commercial e-mail is transmitted that contains false or misleading information in the subject line, thereby depriving the recipients of their statutory right to be free from false and misleading commercial advertisements.

50. Aware of the scourge of modern, electronic advertising—and the resulting frustration, time wasted, clogging of email inboxes, and so forth—the Maryland legislature provided consumers with recourse. A person who violates § 14-3002(b)(iii) is liable to the recipient for statutory damages, along with reasonable attorneys' fees.

51. Defendant's email advertisements contain subject lines that misstate the duration of its purported sales, misstate the frequency of the advertised discount, and so forth. Such emails, described herein along with several examples, render Defendant liable to Plaintiff and putative Class Members because the promotional emails contained false or misleading information in the subject line, in violation of MCEMA.

52. Upon information and belief, Defendant intends to mislead recipients with its false and misleading email subject lines. Defendant is aware that misleadingly manufacturing urgency is a tried and true marketing method of increasing demand, sales, and profits—indeed, it sends the false and misleading emails for precisely this purpose.

53. Upon information and belief, Defendant has sent thousands of emails substantially similar to those described herein to Maryland recipients, with identical and with substantially similar false or misleading subject lines.

54. The emails were approved by Defendant and sent at Defendant's direction.

## V. Class action allegations

55. Plaintiff brings the asserted claims on behalf of a proposed Class of Maryland residents described below:

> All Maryland residents to whom Defendant sent, or directed to be sent, email messages containing a subject line that stated a promotion (or sale) would conclude at a specified time where the promotion (or sale) did not conclude at that time, within the time period of three years prior to the filing of this Complaint until the date on which the Class is certified.

56. The following people are excluded from the proposed Class: (1) any Judge or Magistrate Judge presiding over this action, their staff, and the members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

57. The defined Class is identifiable and Plaintiff is a member of the Class.

58. The proposed Class contains members so numerous that separate joinder of each member of the proposed Class is impractical. Upon information and belief, the Class is comprised of, at minimum, hundreds or thousands of members.

59. Class members can be identified through Defendant's electronic mailing lists and/or through other objective criteria.

60. There are questions of law and fact common to the proposed Class, and these common questions predominate over any individual questions. The common, predominating questions include:

(1) whether Defendant's email subject lines representing the expiration of a promotion (or sale) at a specified time notwithstanding that the promotion (or sale) would continue beyond the represented time constitutes a false or misleading representation with the capacity, tendency, or effect of deceiving a recipient;

(2) whether the emails containing such subject lines are subject to MCCL § 14-3001;

(3) whether recipients are entitled to statutory damages of $500.00 for each email received from Defendant containing such subject lines;

(4) the nature and extent of classwide damages.

61. Like members of the proposed Class, Plaintiff received emails from Defendant advertising Defendant's products that contain false or misleading subject lines.

62. Plaintiff's claims are typical of the claims of proposed Class Members and arise from similar facts. Plaintiff is not subject to any sufficiently unique affirmative defenses.

63. There are no conflicts of interest between Plaintiff and the proposed Class. Plaintiff is committed to vigorously representing the interests of the Class, and has retained competent counsel experienced in litigating class actions and complex litigation.

64. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because, *inter alia*, individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits. The amount of individual damages at stake is small relative to the cost and time of litigating against a well-resourced company. Class Counsel are experienced in litigating class actions and do not foresee difficulties in managing the litigation on a class basis.

**<u>Count I: Violation of Maryland's Commercial Electronic Mail Act</u>**

**(By Plaintiff and the Class)**

65. Plaintiff incorporates the factual allegations set forth above as if fully set forth herein.

66. Plaintiff brings this cause of action individually and on behalf of the members of the proposed Class.

67. As alleged more fully above, Defendant violated the MCEMA by initiating or directing the transmission of commercial email messages that contained false or misleading information in the subject line to Plaintiff's and Class members' email addresses.

68. Defendant's email subject lines stating the supposed duration of its promoted discounts or sales and specified expiration are false and misleading because, as discussed above, the represented duration or expiration was not true and the promoted discounts or sales would go beyond the purported expiration point.

69. These commercial emails contain false or misleading information in violation of MCCL § 14-3002(b)(iii).

70. Defendant initiated the emails containing false or misleading representations in the subject lines to promote its products for sale.

71. Defendant knew or had reason to know that it initiated or caused to be initiated the transmission of such emails to email addresses held by Maryland residents.

72. Defendant's acts and omissions injured Plaintiff and members of the proposed Class.

73. Plaintiff and putative Class Members are entitled to statutory damages of $500.00 for each email they received with false or misleading information in violation of MCCL § 14-3002(b)(iii).

## VI. Jury Demand

74. Plaintiff demands the right to a jury trial on all claims so triable.

## VII. Request for Summons

75. Plaintiff requests that the Clerk of the Court issue a summons for service in this matter.

## VIII. Prayer for Relief.

76. Plaintiff seeks the following relief for herself and the proposed Class:

- An order certifying the claims for class treatment;
- A judgment in favor of Plaintiff and the proposed Class;
- Statutory damages in the amount of $500.00 per violative email;
- Pre- and post-judgment interest;
- Reasonable attorneys' fees and costs permitted by law;
- Injunctive, declaratory, and any additional relief that the Court deems reasonable and just.

Dated: August 3, 2026, Respectfully submitted,

*/s/ Courtney L. Weiner*
Courtney L. Weiner (#1701270006)
Law Office of Courtney Weiner PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
PH: 202-827-9980
cw@courtneyweinerlaw.com

*Counsel for Plaintiff and the proposed class*